IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YOUNAS CHAUDHARY and BUSHRA CHAUDHARY, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-18-2179 |
| CHUBB & SON, INC. d/b/a CHUBB GROUP OF INSURANCE COMPANIES, ARTHUR J. GALLAGHER & CO., and CHRIS BETTINA, | § § § § § § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

In this insurance-coverage dispute, Younas and Bushra Chaudhary sued Arthur J. Gallagher & Co. and Chubb & Son, Inc. (the "Insurers") and an individual insurance agent, Chris Bettina, in the 129th Judicial District Court of Harris County, Texas. (Docket Entry No. 1-2). The Chaudharys asserted claims under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.01, *et seq.*, and the Texas Insurance Code, TEX. INS. CODE § 541.00, *et seq.*, as well as common-law misrepresentation, fraud, and negligence. They also asserted a separate breach of fiduciary duty claim against Bettina. (*Id.*). Arthur J. Gallagher & Co. and Bettina timely removed to federal court based on both federal-question and diversity jurisdiction, (Docket Entry No. 1), and Chubb consented to the removal. (Docket Entry No. 3). The Chaudharys moved to remand, challenging both grounds for removal jurisdiction. (Docket Entry No. 8). For the reasons explained below, the court finds that federal-question jurisdiction exists and denies the motion to remand.

**I.     Background**

At some point before August 2017,[1] the Chaudharys turned to their longstanding insurance agent, Bettina, to insure their home in Spring, Texas. (Docket Entry No. 1-2 at ¶ 8). The couple had worked with the Insurers and Bettina over the years to buy and renew policies covering their home and businesses. (*Id.*). The Chaudharys allege that because of this longstanding business relationship, the Insurers and Bettina knew their coverage needs and their desire to fully protect their home and its contents, valued at almost $20 million. (*Id.* at ¶ 9). The Insurers and Bettina provided them a property-insurance policy that included standard federal flood insurance coverage, which the Chaudharys allege was far short of what they needed for adequate coverage. (*Id.*).

The Chaudharys allege that the Insurers and Bettina assessed their property value through phone conversations, in-person meetings, and visits to the home, and that they agreed to flood insurance based on the Insurers' and Bettina's representations, recommendations, and assurances that their property and assets would be adequately covered. (*Id.* at ¶ 9). They assert that the Insurers and Bettina did not disclose that their policy did not include flood coverage beyond the standard federal flood policy limit. (*Id.* at ¶ 12). They point to specific assurances, including an alleged conversation between their son and Bettina in August 2017, as Hurricane Harvey neared Houston. (*Id.* at ¶ 10). They allege that Bettina confirmed that their home and its contents would be fully covered if there was flooding or other damage from the storm. (*Id.*).

---

[1] The Chaudharys' state-court petition does not specify when they purchased their flood insurance policy from Bettina and the Insurers. (*See* Docket Entry 1-2). The earliest date mentioned in the petition is August 25, 2017, when the Chaudharys "became aware of Hurricane Harvey" and their son contacted Bettina to discuss their policy's coverage. (*Id.* at ¶ 10).

In late August 2017, the Chaudharys' home sustained substantial flood damage during Hurricane Harvey. (*Id.* at ¶ 11). Their standard federal flood insurance policy provided $350,000 in coverage, which, according to the state-court petition, did not cover most of their assets. (*See id.* at ¶ 9, 12). The Chaudharys allege that had the Insurers and Bettina informed them that they lacked excess flood insurance, they would have purchased more insurance, enough to fully cover their home and its contents. (*Id.* at ¶ 12).

In May 2018, the Chaudharys sued the Insurers and Bettina in state court. (Docket Entry No. 1-2). In their notice of removal, the defendants asserted that a federal question exists because the Chaudharys' standard flood insurance policy is part of the National Flood Insurance Program, and federal law preempts state-law claims arising out of a National Flood Insurance Program policy. (Docket Entry No. 1 at ¶¶ 7–13). The defendants also asserted that the properly joined parties are diverse because the in-state defendant, Chris Bettina, was improperly joined. (*Id.* at ¶¶ 14–17).

The Chaudharys timely moved to remand, arguing that their only claims are under state law and no federal-question jurisdiction exists. (Docket Entry No. 8 at 4). They assert that federal preemption does not apply because their claims focus on policy procurement rather than on claims handling. (*Id.* at 4–13). They also argue that diversity jurisdiction does not exist because Bettina, an in-state, Texas citizen, was properly joined. (*Id.* at ¶¶ 16–21).

## II. The Legal Standards

Defendants may remove a state-court action to federal court when federal jurisdiction exists and the removal is procedurally proper. 28 U.S.C. §§ 1441, 1446(b). The removal statute is strictly construed and ambiguities are interpreted in favor of remand. *Manguno v. Prudential Prop. & Cas.*

3

*Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing party has the burden to establish the facts necessary for federal jurisdiction. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253–54 (5th Cir. 1961)).

Federal-question jurisdiction exists if a plaintiff's well-pleaded complaint includes a claim arising under federal law. 28 U.S.C. § 1331. The plaintiff may avoid federal jurisdiction by relying exclusively on state law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal jurisdiction is based on the claims in the operative state-court petition when the case is removed. *Louisiana v. Am. Nat'l. Prop. Cas. Co.*, 746 F.3d 633, 636–37 (5th Cir. 2014).

Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a). The removal statute adds the requirement that none of the properly joined defendants "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

If there is a nondiverse defendant, the removing party may still establish diversity jurisdiction by showing that the nondiverse defendant has been improperly joined to defeat diversity jurisdiction. The removing party must prove either that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court or "actual fraud in pleading the jurisdictional facts." *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). The first approach asks whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover" against the in-state defendant under the state-law claims that are pleaded. *Id.* (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)). The sufficiency of the allegations are judged under federal pleading standards. *Peña v. City of Rico Grande City*, 879 F.3d 613, 617 (5th Cir. 2018).

4

**III.     Analysis**

**A.     Federal-Question Jurisdiction**

The Chaudharys argue that their claims do not arise from the National Flood Insurance Program policy, but from the Insurers' and Bettina's failure to procure them more coverage than the standard flood insurance policy provides. (Docket Entry No. 8 at 7–13). The Chaudharys allege that the Insurers and Bettina led them to believe that they had excess flood insurance and that they relied on the defendants' expertise in deciding what insurance coverage to obtain. (Docket Entry No. 1-2 at ¶ 9). They allege that the Insurers and Bettina told them that their home and its contents were covered in the event of flooding without disclosing the coverage limits. (*See id.*; Docket Entry No. 8 at 1). The Chaudharys argue that these claims relate to policy procurement and not to claim handling and, therefore, because neither the National Flood Insurance Program nor a standard flood insurance policy is implicated, no federal interest is implicated and no federal question exists. (Docket Entry No. 8 at 7–13; Docket Entry No. 18 at 2–5).

The defendants contend that the Chaudharys' state-court petition undermines their argument that the Program and the standard federal flood insurance policy are not implicated. (Docket Entry No. 9 at 19–21). They point to statements from the Federal Emergency Management Agency ("FEMA"), which runs the Program under which standard federal flood insurance policies are written, to explain that cases arising out of National Flood Insurance Program policies "are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act . . . and the Federal common law." (*Id.* at 18 (citing 44 C.F.R. pt. 61, app. A(1), art. IX)).

The National Flood Insurance Act, 42 U.S.C. § 4001, *et seq.*, established the National Flood Insurance Program "to make flood insurance available on reasonable terms and to reduce fiscal

5

pressure on Federal flood relief efforts." *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). The Program's "Write-Your-Own" policies allow private insurers to sell flood insurance that the federal government underwrites. *Id.* FEMA regulations specify the terms and conditions that these standard federal flood insurance policies must contain and how Write-Your-Own insurers may adjust claims. *Id.* While the private insurers selling Write-Your-Own policies are the ones interacting with the purchasers, the federal treasury pays the claims. *Id.* As a result, the defendants argue, the Chaudharys' standard federal flood insurance policy is necessarily implicated.

In *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), the Fifth Circuit considered whether state or federal law applied in an action arising from a standard flood insurance policy issued under the National Flood Insurance Program. *Id.* at 881. The court reasoned that the Program is a "child of Congress . . . and [as] the federal government participates exclusively in the program . . . it is clear that the interest in uniformity of decision. . . mandates the application of federal law." *Id.*

Not all state-law claims related to federal flood insurance policies issued under the National Flood Insurance Program are preempted. The Fifth Circuit distinguishes between state-law claims related to "handling" federal flood insurance policies, which are preempted, and those related to "procuring" the insurance, which are not. "While the national policies underlying the [National Flood Insurance Program] and extensive federal role therein impel [the] conclusion that federal common law governs under flood insurance policies, the same does not apply in actions for tortious misrepresentation against" insurers. *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 796 (5th Cir. 1993).

The Chaudharys rely on district-court decisions in the Fifth Circuit finding state-law claims not preempted in federal flood-policy cases alleging misrepresentations in policy procurement. *See,*

6

*e.g.*, *Richmond v. Chubb Grp. Ins. Cos.*, C.A. No. 06-3973, 2006 WL 2710566, at *2–5 (E.D. La. Sept. 20, 2006); *Jones v. State Farm Fire & Cas. Co.*, C.A. No. 1:06CV11 LTS-RHW, 2006 WL 2359777, at *2–4 (S.D. Miss. Aug. 15, 2006)*; Seruntine v. State Farm & Cas. Co.*, No. C.A.06-1580, 2006 WL 2361641, at *2–5 (E.D. La. Aug. 7, 2006). In cases arising from Hurricane Katrina, several district courts concluded that when "tort claims or extra-contractual claims related to an [National Flood Insurance Act] policy" are asserted, the "insured can obtain no reimbursement from the federal treasury because these claims fall outside the scope of the Act." *Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 534 (E.D. La. Apr. 25, 2006); *Cosse v. Matte*, C.A. No. 06-2590, 2006 WL 1968868, at *2 (E.D. La. July 7, 2006). When the federal treasury is not implicated, these courts reason, preemption does not apply to create federal-question jurisdiction. *Id.*

Recently, the Fifth Circuit clarified the distinction between claim-handling and policy-procurement allegations in the context of a longstanding relationship between an insured and an insurer selling a National Flood Insurance Program policy. In *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397 (5th Cir. 2012), the insured, Grissom, had a standard federal flood insurance policy. *Id.* at 399. Grissom sued Liberty Mutual, claiming that it had not informed him that he was eligible for greater coverage when he bought the policy. *Id.* Hurricane Katrina destroyed his home, and Liberty Mutual paid the policy limits. *Id.* Grissom sued for the difference between the policy proceeds received and what he would have received from a policy with higher coverage. *Id.* The district court denied Liberty Mutual's motion for summary judgment and submitted the case to the jury, which found for Grissom. *Id.* Liberty Mutual timely appealed, asserting that the district court erred in concluding that the case "was a policy-procurement case rather than a claims handling case

7

subject to preemption."[2] *Id.* at 400. In reversing the district court's determination that the case was a policy-procurement case and instructing that court to dismiss Grissom's claim, the Fifth Circuit explained that "[t]he key factor to determine if an insurer is 'claims handing' is the status of the insured at the time of the interaction between the parties." *Id.* at 401. If the insured "is already covered and in the midst of a non-lapsed insurance policy," then the insurer's interactions with the insured "are 'claims handling' subject to preemption." *Id.* Because Grissom's suit was not about the initial procurement of the insurance policy, but about policy renewal, his state-law claim was preempted. *Id.*

Under the *Grissom* analysis, the Chaudharys' claims establish federal-question removal jurisdiction. The state-court petition alleges that the Chaudharys had a "long standing business relationship in which [the Insurers] provided insurance coverage for [the Chaudharys'] home and businesses." (Docket Entry No. 1-2 at 3). The petition alleges that the Chaudharys had a policy in place that provided flood coverage; the petition identifies the policy and alleges that the coverage limit was insufficient to cover their home and its contents. (*Id.*). The interactions between the parties that the Chaudharys argue entitle them to damages occurred not just before, but also after, the Chaudharys obtained their standard flood insurance policy. The petition alleges that the Insurers and Bettina "continuously and expressly assured [the Chaudharys] that they would be fully covered in the event of damage and that there were sufficient insurance policies in place to cover both [their] home and its contents." (*Id.* at 4). Because the Chaudharys were "covered and in the midst of a

---

[2] The Fifth Circuit addressed two other issues that Liberty Mutual raised on appeal: (1) "whether the district court erred by allowing [the] case to go to a jury when federal funds were at risk"; and (2) whether Mississippi law recognizes negligent misrepresentation in the insurance context." *Id.* at 400. The Fifth Circuit concluded that "[b]ecause FEMA is presumed to be paying both the litigation expenses and any resulting damage award, the district court erred in submitting the case to the jury." *Id.* at 402. The court also determined that Mississippi law did not provide a basis for Grissom's negligent misrepresentation claim against Liberty Mutual. *Id.* at 403.

8

non-lapsed insurance policy" when the alleged actions giving rise to liability occurred, their claims relate to the "handling" of their standard flood insurance policy, and not merely its "procurement." *See Grissom*, 678 F.3d at 401. Federal law preempts these "claims-handling" causes of action. *Id.*

Even under more generous interpretations of the "handling" and "procurement" distinction, the Chaudharys' argument against federal-question jurisdiction still fails. Their state-court petition alleges improper handling of their claims under their standard flood insurance policy, as well as improper descriptions of the coverage amounts. The petition alleges that the Insurers and Bettina are liable under the Texas Deceptive Trade Practices Act for, among other acts, "[u]nreasonably delaying the investigation, adjustment[,] and resolution of [the Chaudharys'] claims" and "their failure to properly investigate." (Docket Entry No. 1-2 at ¶ 16(e)–(f)). The misrepresentations were not only about coverage limits and the Insurers' and Bettina's failure to disclose the availability of added coverage. Instead, the alleged misrepresentations were related to the insurance coverage the Chaudharys already had. The petition alleges that even after the Chaudharys obtained their policy, the Insurers and Bettina falsely represented "that their insurance policies had characteristics or benefits that they did not have" and "that their insurance policies were of a particular, standard, quality, or grade when they were of another." (*Id.* at ¶ 17–18). The Chaudharys further allege that the insurers "breached an express warranty that the damage caused by flood water . . . would be covered under the subject insurance policies." (*Id.* ¶ 19).

The Chaudharys' legal claims arise from the Insurers' and Bettina's statements about their policy before and after its effective dates, and from the handling of their claims under the policy. These claims, and the strong federal interest in the administration of the Program, are an ample basis

9

for removal federal-question jurisdiction under 28 U.S.C. § 1331. *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009).

**IV.    Conclusion**

Having found federal-question subject-matter jurisdiction under 28 U.S.C. § 1331, the court need not also decide whether Bettina was improperly joined. Removal was proper, and the Chaudharys' motion to remand to state court is denied.

SIGNED on September 28, 2018, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge