United States District Court
Southern District of Texas

**ENTERED**

December 20, 2018

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| YOUNAS CHAUDHARY and | § | |
| BUSHRA CHAUDHARY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-2179 |
| | § | |
| CHUBB & SON, INC. d/b/a | § | |
| CHUBB GROUP OF INSURANCE | § | |
| COMPANIES, ARTHUR J. GALLAGHER | § | |
| & CO., and CHRIS BETTINA, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is one of the insurance-coverage disputes that Hurricane Harvey generated. Younas and

Bushra Chaudhary owned a $20 million home and contents that they allege had insufficient flood-

insurance coverage to pay for the damage the storm caused.  They sued Chubb & Son, Inc., Arthur

J. Gallagher & Co., their broker, and Gallagher's employee, Chris Bettina, in the 129th Judicial

District Court of Harris County, Texas, asserting claims under the Texas Deceptive Trade Practices

Act, TEX. BUS. & COMM. CODE § 17.01, *et seq.*, and the Texas Insurance Code, TEX. INS. CODE

§ 541.00, *et seq.*, as well as for common-law misrepresentation, fraud, and negligence.  They also

asserted a separate breach of fiduciary duty claim against Bettina.  The defendants timely removed,

and this court denied remand.  The Chaudharys amended their complaint; Gallagher and Bettina

moved for judgment on the pleadings; Chubb moved to dismiss under Federal Rule of Civil

Procedure 12(b)(6)[1]; the Chaudharys responded to both motions; and Gallagher, Bettina, and Chubb

---

[1]   The defendant, Bankers Standard Insurance Company, notes in its motion to dismiss that the
amended complaint incorrectly identifies it as Chubb & Son, Inc. d/b/a Chubb Group of Insurance
Companies.  (Docket Entry No. 32 at 1).  This defendant continues to refer to itself as "Chubb" throughout

replied.  (Docket Entry Nos. 1–3, 20, 29, 31–32, 34–37).   Each argument and response is analyzed below.

## I.     Background

### A.     Hurricane Harvey and the Chaudharys' Insurance Coverage

Like many in the Houston area, the Chaudharys returned to their home after Hurricane Harvey to discover extensive flood damage.  (Docket Entry No. 29 at ¶ 13).  The Chaudharys state that when they evacuated as the storm approached, they did not worry about the financial impact of flood damage because of coverage assurances from their insurance broker, Gallagher, and its employee, Bettina.  (*See id.* ¶¶ 11–13).  They had a "long standing business relationship" with Gallagher and Bettina, purchasing insurance coverage for their home and businesses.  (*Id.* at ¶ 9).  The Chaudharys explain that they asked Gallagher and Bettina to "provid[e] appropriate insurance coverage for [their] home, which including contents, is valued at nearly $20 million."  (*Id.*).  They allege that Gallagher and Bettina "continuously and expressly assured [them] that they would be fully covered in the event of damage and that there were sufficient insurance policies in place to cover both [the Chaudharys'] home and its contents."  (*Id.* at ¶ 11).  The amended complaint states that these representations were made "immediately prior to Hurricane Harvey's landfall, as well as . . . over the preceding years."  (*Id.* at ¶ 14).  The Chaudharys do not identify specific representations made before they purchased a federal Standard Flood Insurance Policy from Gallagher and Bettina.

After the Chaudharys filed their insurance claim with Chubb, they received a letter notifying them that they did not have flood-insurance coverage beyond their Standard Flood Insurance Policy.  (*Id.*).  They were informed "that their claim for excess flood insurance coverage was denied."  (*Id.*).

the motion. This Memorandum and Order refers to Bankers Standard as "Chubb."

The Chaudharys allege that "[t]his letter and claim determination [were] in direct contradiction" to Gallagher's and Bettina's alleged assurances. (*Id.*). The Chaudharys assert that if they had known about the policy limit of their flood-insurance coverage, they would have purchased more coverage, taking "the necessary steps to mitigate damages and prevent the sizeable losses that they sustained." (*Id.*).

### B.    The Chaudharys' Insurance Claim

The Chaudharys assert that their claims are based on "two distinct and separate legal theories." (*Id.* at ¶ 1). First, they argue that they have a "procurement" claim against Chubb that "the company failed to provide an excess flood insurance policy to adequately protect [their] home and its contents." (*Id.*). Second, they argue that their claims against their broker, Gallagher, and its employee, Bettina, focus on "conduct allowing an excess flood insurance policy to lapse and the failure to procure additional excess flood insurance." (*Id.*). The Chaudharys assert that these claims "have nothing to do with—and do not implicate—FEMA or federal funds in any way." (*Id.*).

The Chaudharys do not label their cause of action against Chubb, but it appears to be negligence in obtaining flood coverage. The Chaudharys allege that "Chubb owed [them] the duty to use reasonable diligence in attempting to procure the requested insurance and to inform [them] if Chubb was unable to do so." (*Id.* at ¶ 28). The Chaudharys allege that before they purchased the federal Standard Flood Insurance Policy, they sought full coverage for their $20 million home and contents, and Chubb was aware of what they sought. (*Id.* at ¶¶ 20–21). The Chaudharys assert that "Chubb and its agents should have taken reasonable steps to inform [them] that their home was not fully covered," and that, had Chubb done so, the Chaudharys would have purchased an excess flood

policy.  (*Id.* at ¶¶ 21, 27; *see id.* at ¶ 25).  They allege that because Chubb did not inform them that they lacked excess coverage, they suffered damages.  (*Id.* at ¶ 29).  The Chaudharys assert that their "claims against Chubb [arose] at the time before Chubb wrote the first FEMA/SFIP policy for [their] home," when the Chaudharys "were merely potential customers of Chubb."  (*Id.* at ¶ 23).

The Chaudharys make a similar assertion that their claims against Gallagher and Bettina do not involve claims-handling under their flood-insurance policy.  (*Id.* at ¶ 32).  They argue that their claims focus on the "excess flood policy that had already lapsed at the time of Hurricane Harvey due to the negligence of [Gallagher] and Bettina," and, second, that those defendants failed to procure adequate flood insurance or to advise them that their flood-insurance policy was inadequate.  (*Id.*).  They assert claims against Gallagher and Bettina under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.01, *et seq.*, and the Texas Insurance Code, TEX. INS. CODE § 541.00, *et seq.*; common-law negligent misrepresentation and misrepresentation; and negligence.  (*Id.* at ¶¶ 37–67).  They also assert a breach of fiduciary duty claim against Bettina.  (*Id.* at ¶¶ 53–55).

The Chaudharys seek actual damages and punitive damages, alleging that Gallagher and Bettina acted "willfully, intentionally, knowingly, and recklessly" through their "affirmative and fraudulent misrepresentations," (*id.* at ¶ 70), and they seek additional damages under § 17.50(b)(1) of the Texas Deceptive Trade Practices Act and Article 21.21, § 16 and Article 21.55 of the Texas Insurance Code[2] because Gallagher and Bettina's actions were allegedly "committed knowingly and intentionally."  (*Id.* at ¶ 71).

### C.  The Motions to Dismiss and for Judgment on the Pleadings

---

[2]  Texas codifies these statutes governing unfair settlement practices and prompt payment of claims in the Insurance Code, including § 541.060(2) and (7), the provisions at issue here.

Chubb has moved to dismiss the Chaudharys' claim, arguing that "[n]o court has held that an insurer owes the duty [that the Chaudharys] allege Chubb owed them." (Docket Entry No. 32 at 2). Chubb argues that even if a cause of action exists, the Texas two-year limitations period would bar the Chaudharys' suit, which they filed more than two years after Chubb issued the policy. (*Id.*). Chubb also argues that Texas law does not "recognize[] such a claim by a 'potential customer' against an insurer." (*Id.*).

Gallagher and Bettina have moved for judgment on the pleadings, arguing that federal law preempts the Chaudharys' state-law claims. (Docket Entry No. 31 at 15–21). They contend that because the Chaudharys had a National Flood Insurance Program Standard Flood Insurance Policy and "were insured at all times and in the midst of a non-lapsed flood policy during their interactions with" Gallagher and Bettina, the Chaudharys' causes of action are about claims-handling under the federal policy. (*Id.* at 6). Because federal law preempts state-law claims-handling claims under a Standard Flood Insurance Policy as a matter of law, Gallagher and Bettina seek dismissal. (*Id.*).

The Chaudharys oppose both motions. (Docket Entry Nos. 34–35). They argue that their claims against Chubb are not barred because the discovery rule tolls the statute of limitations; cases have recognized an insurer's duty to use reasonable diligence to procure the insurance coverage that the insured requests; and their claims against Gallagher and Bettina are not preempted because they relate to policy procurement, not claims-handling. (Docket Entry No. 34 at 10–20; Docket Entry No. 35 at 3–6).

## II. The Legal Standards

### A. The Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) requires dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do." *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a

claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation and alteration omitted).

In considering a motion to dismiss under Rule 12(b)(6), "a district court must limit itself to the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court may deny a motion to amend as futile if an amended complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012). The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Id.*

### B.        The Motion for Judgment on the Pleadings

Rule 12(c) states that "[a]fter the pleadings are closed—but early enough to not to delay

trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  "A motion brought

pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material

facts are not in dispute and a judgment on the merits can be rendered by looking to the substance

of the pleadings and any judicially noticed facts." *Great Plains Tr. Co.*, 313 F.3d at 312.  "Pleadings

should be construed liberally, and judgment on the pleadings is appropriate only if there are no

disputed issues of fact and only questions of law remain." *Id.* (citing *Voest–Alpine Trading USA*

*Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998)).  The Rule 12(c) standard for judgment

on the pleadings is the same as the standard for a motion to dismiss for failure to state a claim under

Rule 12(b)(6).  *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (citing *Johnson v. Johnson*,

385 F.3d 503, 529 (5th Cir. 2004)).

### III.      Analysis

### A.        Chubb's Motion to Dismiss

The amended complaint alleges that Chubb violated its "duty to inform [the Chaudharys] that

[it] could not completely insure [them]," and that they would need to find more flood coverage from

another insurer.  (Docket Entry No. 29 at ¶ 25).  The Chaudharys allege that Chubb breached this

duty by "fail[ing] to take reasonable steps to inform [the Chaudharys] that Chubb could not provide

full and adequate flood insurance coverage for [their] home." (Docket Entry No. 29 at ¶ 26).  Chubb

urges the court dismiss this claim.  (Docket Entry No. 32).

Chubb first argues that recognizing this claim  would extend the limitations period beyond

two years of the policy's issuance.  (*Id.* at 5 (citing Docket Entry No. 29 at ¶ 23)).  The Chaudharys

8

filed their case in state court on May 25, 2018, several months after the two-year limitations period

for tort claims ended.  (*See* Docket Entry No.1-2).

 The Chaudharys argue that their suit is timely because, while "limitations usually commence

at the time of the tortious behavior," the discovery rule applies and tolls limitations.  (Docket Entry

No. 35 at 8).  The Chaudharys assert that Chubb "has 'the burden to establish the affirmative defense

of limitations, including the accrual date of the plaintiff's claims.'"  (*Id.* (quoting *Whiddon v. Chase*

*Home Fin., LLC*, 666 F. Supp. 2d 681, 688 (E.D. Tex. 2009))).  They argue that Chubb has not

provided "any definite date of accrual" or "negate[d] the discovery rule."  (*Id.*).

 The parties agree that the Texas limitations period applies and that under Texas law, tort

claims, including negligence claims, are governed by a two-year statute of limitations.  TEX. CIV.

PRAC. & REM. CODE § 16.003(a).  A court should dismiss based on the statute of limitations if that

bar to relief appears on the face of the complaint or other appropriately considered materials.  *See*

*Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991).  The amended

complaint is clear that the Chaudharys' claims against Chubb "ar[ose] at the time before Chubb

wrote the first FEMA/SFIP policy for Plaintiff's home," and that the first policy was issued in 2015.

(Docket Entry No. 29 at ¶¶ 16, 23).  Even if the federal flood policy was not issued until December

31, 2015, the Chaudharys still sued Chubb over five months after the limitations period ended.

 If the discovery rule applies, it tolls the statute of limitations "until the claimant discovers

or, in the exercise of reasonable diligence, should have discovered the facts establishing a cause of

action."  *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990) (citing *Willis v. Maverick*, 760 S.W.2d

642, 646 (Tex. 1988)).  "The Texas Supreme Court has restricted the use of the discovery rule to

'exceptional cases' so as to avoid defeating the purposes behind limitations statutes."  *Bradley v.*

9

*Phillips Petroleum Co.*, 527 F. Supp. 2d 625, 639 (S.D. Tex. 2007) (citing *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006)).  "[T]he discovery rule applies only where 'the nature of the injury [is] inherently undiscoverable and . . . the injury itself [is] objectively verifiable.'"  *AIG Specialty Ins. Co. v. Tesoro Corp.*, 840 F.3d 205, 212 (5th Cir. 2016) (alteration in original) (quoting *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).  An injury is not "inherently undiscoverable" simply because a plaintiff failed to discover it within the applicable limitations period.  *Wagner & Brown, Ltd. V. Horwood*, 58 S.W.3d 732, 735 (Tex. 2001).  Rather, the focus is on the nature of the injury itself—whether it is of the type that generally is discoverable by the exercise of reasonable diligence.  *Id.* at 734–35.

The Chaudharys' argument that Chubb has the burden to negate the discovery rule is unpersuasive.  "A defendant who has established that the suit is barred cannot be expected to anticipate the plaintiff's defenses to that bar."  *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988); *see also Via Net*, 211 S.W.3d at 313.  Texas courts typically require a party invoking this basis for tolling to plead the rule in its original or amended petition, by "plead[ing] sufficient facts to put the defense on notice of the theories on which the complaint is based."  *See Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 320 (5th Cir. 2011) (quoting *TIG Ins. Co. v. Aon Re, Inc*., 521 F.3d 351, 357 (5th Cir. 2008)).  The party asserting the discovery rule—the Chaudharys—has "the burden of proving and securing favorable findings" that the rule applies.  *Woods*, 769 S.W.2d at 518.

In their response, the Chaudharys imply that they put Chubb on notice that they would invoke the discovery rule by alleging that they "were unaware that they were woefully underinsured and did not become aware of the issue until they filed a claim on their insurance."  (Docket Entry

No. 35 at 9).  But alleging that "[i]f Chubb had taken reasonable steps to inform [the Chaudharys] that Chubb could not provide full and adequate flood insurance for [their] home, [they] would have procured additional insurance coverage," (Docket Entry No. 29 at ¶ 27), is not enough, given that the amended complaint alleges that the Chaudharys' "claims against Chubb arose when [they] were merely potential customers." (*Id.* at ¶ 23).  This allegation concedes that the statute of limitations began to run before the policy issued.  Even under the lenient standard of Rule 8(b), the Chaudharys pleaded a specific factual allegation that undermines any indirect or implicit notice to Chubb that they were asserting the discovery rule and invoking the discovery rule in a response does not shift the burden to the defendants, as the Chaudharys suggest.

Chubb argues in its reply that without allegations that the Chaudharys' "injury was 'inherently undiscoverable,'" the Chaudharys cannot invoke the discovery rule.  (Docket Entry No. 37 at 3).  Chubb asserts that the Chauhdarys "do not allege that they could not have discovered" the inadequate coverage, and Chubb argues that they could have discovered the extent of their coverage "as early as 2015." (*Id.* at 2).  "Plaintiffs would have known the amount of their policy limits for flood damage in 2015 simply by looking at their policy declarations page." (*Id.*).

Chubb is correct.  In many cases applying Texas law and involving allegations that an insurer misrepresented an insurance policy, courts conclude that the discovery rule does not toll the statute of limitations when the plaintiff could have discovered the policy terms by examining the document. *See, e.g.*, *Hunton v. Guardian Life Ins. Co. of Am.*, 71 F. App'x 441, 441 (5th Cir. 2003) (per curiam); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 789 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (the insured's claims for misrepresentation, fraud, and violations of the Texas Deceptive Trade Practices Act and Texas Insurance Code stemming from alleged misrepresentations

11

the insurer made when the policy was sold accrued at that time); *Sabine Towing & Transp. Co. v. Holliday Ins. Agency, Inc.*, 54 S.W.3d 57, 62–63 (Tex. App.—Texarkana 2001, pet. denied) (the limitations period for an insured's claim of negligent misrepresentation in procuring insurance expired two years after the insured first received the certificate of insurance).

"An insured has a duty to read the policy and is charged with knowledge of the policy's terms and conditions." *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H-06-2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (citing *Ruiz v. Gov't Emps. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.—El Paso 1999, no pet.); *Amarco Petroleum, Inc. v. Tex. Pac. Indem. Co.*, 889 S.W.2d 695, 699 (Tex. App.—Houston [14th Dist.] 1994, writ denied)). The insured has sufficient information when it receives the policy to pursue a legal action "based on an alleged misrepresentation about the policy by the insurer." *Id.* (citing *Mauskar v. Hardgrove*, No. 14-02-00756-CV, 2003 WL 21403464, at *3 (Tex. App.—Houston [14th Dist.] June 19, 2003, no pet.)).

*AIG Specialty Insurance Company*, 840 F.3d 205 (5th Cir. 2016), is instructive. In 2000, Tosco Corporation sold a refinery to Ultramar and agreed to indemnify Ultramar for $50 million of remediation costs. 840 F.3d at 207. Ultramar purchased $100 million in additional coverage from the Chartis Specialty Insurance Company. *Id.* Ultramar sold the property to Tesoro Refining under an agreement stating that Ultramar would assign the indemnities and either assign or have Chartis endorse Tesoro as an insured to the Chartis policy. *Id.* Chartis approved the endorsement, but it mistakenly listed the insured as Tesoro Corporation, the parent company, rather than Tesoro Refining. *Id.* In 2012, Tesoro Refining and Tesoro Corporation sought policy reformation. *Id.* The district court found "that the reformation claim was barred by the Texas four-year statute of limitations . . . because, at a minimum, the Tesoro Parties should have discovered the alleged

12

mistake" during earlier litigation against Tosco Corporation related to the property's environmental issues.  *Id.* at 208.

The Fifth Circuit affirmed, rejecting the Tesoro parties' argument that the discovery rule applied.  *Id.* at 210–12.  The Tesoro parties had not identified "any basis for concluding that the injury in this case . . . was 'inherently undiscoverable,'" and reading the policy would have alerted the Tesoro parties to the fact that the wrong entity was named as the insured.  *Id.*

While the Chaudharys allege that their claim against Chubb "arose when [they] were merely potential customers of Chubb as it relates to flood insurance for their home," they also allege that during the policy period, "Chubb and its agents should have taken reasonable steps to inform [them] that their home was not fully covered."  (Docket Entry No. 29 at ¶¶ 21, 23).  The Chaudharys have offered no evidence that, when they received the policy, they could not have discovered that their excess flood coverage had lapsed and that their policy did not fully cover the value of their home and contents.  Chubb argues that the policy provided the necessary information to discover whether their home was adequately covered.  (Docket Entry No. 37 at 2–3).  There is no basis to infer that the coverage limit could not be discovered within the limitations period.  The discovery rule is inapplicable, and the claim against Chubb is dismissed, with prejudice, because amendment would be futile.

Chubb also argues that Texas law does not recognize the Chaudharys' claim against them.  (Docket Entry No. 32 at 5).  Because the statute of limitations precludes the Chaudharys' claim against Chubb, the court need not reach this argument.  Even if the Chaudharys could invoke the discovery rule, the court would still dismiss the claim because the Chaudharys have not pleaded sufficient facts to state a negligence claim against Chubb.

13

The Chaudharys argue that their claim against Chubb finds support in Texas law.  An agent or broker does owe a duty to a customer seeking specified insurance coverage.  *See, e.g.*, *Coachmen Indus., Inc. v. Willis of Ill., Inc.*, 565 F. Supp. 2d 755, 768 (S.D. Tex. 2008); *May v. United Servs. Ass'n*, 844 S.W.2d 666, 669 (Tex. 1993) ("It is established in Texas that an insurance agent who undertakes to procure insurance for another owes a duty to a client to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if unable to do so.").  Chubb is not alleged to be the insurance agent or broker who communicated with the Chaudharys.  There is no allegation that the Chaudharys talked to Chubb or communicated their insurance to Chubb other than through the broker.

The Chaudharys cited *Leigh v. Keenstler*, No. 14-08-00245-CV, 2009 WL 3126538 (Tex. App.—Hous. [14th Dist.] Oct. 1, 2009, no pet), for the proposition that "[u]nder well-established Texas law, an insurance agent who undertakes to procure insurance for another owes his client the common-law duties to use reasonable diligence in attempting to place the requested insurance and to inform the client promptly if he is unable to do so."  *Id.* at *1.  The court concluded that an insurance agent who did not procure a motorist coverage in an amount equal to the policy limits of her liability insurance did not breach this duty of care.  *Id.* at *3.  The motorist had requested a certain coverage amount, which the agent procured, fulfilling "his common-law duty"; "as a matter of law, he had no duty to do more."  *Id.*  "The agent has no duty to extend the client's insurance protection merely because the agent may know of the client's need for additional insurance, especially in the absence of evidence of prior dealings in which the agent customarily has attended to the client's insurance needs without consulting her."  *Id.* at *1.

14

While the Chaudharys allege that they sought "full" coverage for their $20-million home and contents, the amended complaint does not plead that they communicated this to Chubb. (Docket Entry No. 29 at ¶ 18). The Chaudharys allege that Chubb "had actual knowledge of the value of Plaintiffs' home" and that the Chaudharys "sought full coverage for their home." (Docket Entry No. 29 at ¶¶ 18, 20). They do not allege that Chubb was aware that the Chaudharys wanted this coverage amount. Nor do they allege a relationship between Chubb and the Chaudharys that would have alerted Chubb to the Chaudharys' desire for this coverage amount.

The Chaudharys also fail to point to case law suggesting that the insurance company, like an insurance agent in *Coachmen*, owes this duty to the insured. Chubb argues that the duty of care the Chaudharys refer to exists between an agent and the insured, but not between the insurer and the insured. (Docket Entry No. 37 at 5). The case law supports Chubb's argument that the Chauhdarys are attempting to bring a novel claim. The cases the Chaudharys cite focus on the insurance agent's or broker's duty to its clients, not to the insurer. (*See* Docket Entry No. 35 at 5; Docket Entry No. 37 at 3).

Even if the limitations period does not bar their claims, the Chaudharys have not pleaded facts sufficient to allege that Chubb breached a duty owed to them by not procuring $20 million flood-insurance coverage for their home and contents. The court dismisses the claim against Chubb, with prejudice, because amendment would be futile.

### B.    Arthur J. Gallagher & Co. and Bettina's Motion for Judgment on the Pleadings

Gallagher and Bettina argue that the amended complaint asserts state-law claims for the handling and coverage of Chaudharys' federal policy claims that do not avoid preemption. (*See* Docket Entry No. 31 at 12). The Chaudharys admit that they had a federal Standard Flood Insurance

Policy issued by the National Flood Insurance Program and that their claim under that policy was "paid in full" after Hurricane Harvey." (Docket Entry No. 29 at ¶ 7). They argue that their claims against Gallagher and Bettina "have nothing to do with any FEMA/SFIP policy," but are about "an excess flood policy that had already lapsed" when Hurricane Harvey damaged their home, and about Gallagher and Bettina's "failure to procure or inform [the Chaudharys] that even the excess policy that had lapsed was woefully inadequate to insure the [Chaudharys'] home."[3] (*Id.* at ¶ 32). They argue that because their federal policy paid in full, their claims do not implicate federal funds. (*Id.* at ¶ 35). The Chaudharys also argue that "because the previous excess flood insurance policy had already lapsed," they "were former customers and potential future customers for excess flood insurance." (*Id.* at ¶ 36).

### 1.    Preemption of Flood Insurance Claims in the Fifth Circuit

The National Flood Insurance Act, 42 U.S.C. § 4001, *et seq.*, established the National Flood Insurance Program "to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts." *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). The Program's "Write-Your-Own" policies allow private insurers to sell flood insurance that the federal government underwrites. *Id.* FEMA regulations specify the terms and conditions for these standard federal flood insurance policies and how Write-Your-Own insurers are to adjust claims. *Id.* While the private insurers selling Write-Your-Own policies interact with the purchasers, the federal treasury pays the claims. *Id.*

---

[3]  As discussed below, the Chaudharys' amended complaint is inconsistent on the existence of an excess policy. While it alleges that there was a lapsed excess flood-insurance policy, it also alleges that "the only policy that was procured for Plaintiffs was an insurance policy that covered losses up to the maximum amount offered by the National Flood Insurance Program (NFIP)." (Docket Entry No. 29 at ¶ 66). The policy would clear when the excess policy expired, and that the Chaudharys' excess policy had expired.

The Fifth Circuit distinguishes between state-law claims about claims handling and those about policy procurement.  Federal law preempts handling claims, but not procurement claims.  *See Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389–90 (5th Cir. 2005); *Campo*, 562 F.3d at 757–58.  In *Campo*, the Fifth Circuit explained that Congress "chose to confine the plain language of its preemption to handling."  *Id.*  The court reasoned that "permitting prosecution of procurement-related state-law tort suits," unlike claims-handling cases, "does not impede the full purposes and objectives of Congress."  *Id.* at 758.

In July 2009, shortly after *Campo*, "FEMA issued a bulletin that cited and disagreed with *Campo*."  *Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 302 (5th Cir. 2015).  It stated that "FEMA previously understood and intended its regulations to preempt state law claims related to policy formation, renewal, and administration arising from allegations of WYO Company error as distinct from agency error" and that "preemption should apply to the nationally uniform and FEMA-mandated processes governing policy issuance."  *Id.* at 302–03 (quoting FEMA Bulletin W–09038 (July 16, 2009)).

In *Spong*, the Fifth Circuit considered an interlocutory appeal to decide whether *Campo* "should be reversed or has been superseded by FEMA's pronouncement and whether all NFIP policy procurement disputes are preempted by federal law."  *Id.* at 303.  The court affirmed its *Campo* holding:

> Applying *Campo*, as we must, we hold federal law does not preempt the Spongs' policy-procurement claims.  While the NFIA preempts claims-handling causes of action and claims, it does not preempt procurement claims. . . .  Here, the Spongs were not already covered by flood insurance at the time the policy issued on March 16, 2006; they were in the position of "potential future policyholder[s]." Accordingly, federal law does not preempt their state tort-law claims to the extent

> that they implicate Fidelity's acts or omissions regarding issuance of the policy because those claims are procurement-based, not claims-handling-based.

*Id.* at 306.  The Fifth Circuit maintained the distinction between state-law claims-handling and policy-procurement suits, holding that federal law did not preempt procurement claims.  *Id.*

The line between procurement and handling can be unclear.  An insured's attempts to secure payment for hurricane damage from an insurer are claims-handing claims.  *See Wright*, 415 F.3d at 389–90.  Disputes over renewal notices are also considered claims-handling claims.  *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 173 (5th Cir. 2009).  But *Campo* instructs that after the federal policy has lapsed, a former customer's interactions with the insurer are then considered policy-procurement claims.  *Campo*, 562 F.3d at 756.

The Fifth Circuit provided its clearest guidance in *Grissom v. Liberty Mutual Insurance Co.*, 678 F.3d 397 (5th Cir. 2012).  The plaintiff had a federal flood policy, and Liberty Mutual paid the policy limits after Hurricane Katrina destroyed the plaintiff's home.  *Id.* at 399.  The plaintiff sued Liberty Mutual, alleging that the insurance company had not informed him that he was eligible for greater coverage and seeking the difference between the policy proceeds he received and what he would have received from a policy with higher coverage.  *Id.*  The district court denied Liberty Mutual's motion for summary judgment and submitted the case to the jury, which found for the plaintiff.  *Id.*  Liberty Mutual timely appealed, asserting that the district court erred in concluding that the case "was a policy procurement case rather than a claims handling case subject to preemption."  *Id.* at 400.  In reversing the district court's finding of a policy-procurement case and instructing that court to dismiss the plaintiff's claim, the Fifth Circuit explained that:

> The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties.  If the

individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are "claims handling" subject to preemption.

*Id.* at 401.  Because the plaintiff "was insured by Liberty Mutual at the time of his interactions with Liberty Mutual" giving rise to his lawsuit, his state-law claim was for claims handling and was preempted.  *Id.*

### 2.    Whether the Chaudharys' Claims Are About Claims Handling or Policy Procurement

The Chaudharys' amended complaint only vaguely pleads the facts that give rise to their claims against Gallagher and Bettina.  (*See generally* Docket Entry No. 29).  The allegations do not include when the alleged misrepresentations and other tortious actions occurred, which matters in determining whether the claims arising from those actions are for policy handling or policy procurement.  *Grissom* demonstrates that establishing the time line for the policy is key to determining whether claims related to flood insurance are preempted.  The Fifth Circuit's different holdings in *Spong* and *Grissom* are largely explained by the fact that in *Spong*, the insured's claims related to misrepresentations before the policy issued that led the insured to buy the policy.  *Spong*, 787 F.3d at 306.  In *Grissom*, the allegedly tortious acts took place after the federal policy had issued.  *Grissom*, 678 F.3d at 401.

Gallagher and Bettina argue that framing the claims as only about procurement does not match the substance of the Chaudharys' allegations.  (Docket Entry No. 31 at 19).  Gallagher and Bettina contend that because the insured's status at the time of the interactions giving rise to the legal claims determines whether claims relate to procurement or handling, and because "the Chaudharys' status at the time of their Hurricane Harvey claim plainly was 'covered,'" their claims

are about the handling of their federal policy.  (*Id.* at 15).   Gallagher and Bettina assert that even

if the claims are about the excess flood-insurance policy, the amended complaint does not clearly

allege when liability accrued.   They point out that the Chaudharys allege "that they were 'long

standing' customers of [Gallagher and Bettina] and insured by a flood insurance [policy] for many

years," while also alleging that they "were 'former customers and potential future customers for

excess flood insurance.'"  (*Id.* (quoting Docket Entry No. 29 at ¶¶ 9, 16, 36)).  Gallagher and Bettina

argue that the Chaudharys have failed to plead facts sufficient to support their assertion that their

claims concern only the procurement and lapse of the excess flood-insurance policy.   (*Id.* at 7).

They contend that the amended complaint fails to include "any description of what excess flood

coverage was requested by the Chaudharys or the terms of the supposedly lapsed excess flood

policy." (*Id.*).  Because the conclusory allegations about the time line and the alleged excess policy

are not accepted as true under the Rule 12(b)(6) standard, Gallagher and Bettina urge the court to

find that the Chaudharys' claims are preempted.  (*Id.* at 8).

 The Chaudharys respond that their claims concern only the policy procurement and the lapse

of the previous policy.  (Docket Entry No. 34 at 10).   They argue that their allegations about

procurement show that their claims are not preempted.  (*Id.*).  The Chaudharys distinguish *Grissom*,

arguing that "in *Grissom*, [if] there was no original federal flood policy, Grissom's suit would not

exist."  (*Id.* at 15).  They assert that they "would still have claims against" Gallagher and Bettina

even if there was no federal flood policy, based on the allegedly lapsed excess policy and for the

failure "to procure enough flood insurance to cover [the Chaudharys'] assets."  (*Id.*).

 Gallagher and Bettina reply that "[t]he Chaudharys' claims would similarly not exist if there

was no original federal flood policy."  (Docket Entry No. 36 at 4).  They explain that, by definition,

an *excess* flood policy "must sit on top of underlying coverage," and that a suit over insufficient excess coverage necessarily implicates the underlying federal flood insurance. (*Id.*). They distinguish *Campo*—in which the Fifth Circuit found that a former insured whose policy had lapsed asserted procurement claims, not handling claims—by emphasizing the Fifth Circuit's reasoning that the expired policy meant that the insurer "was thus by definition incapable of handling any new claims." (Docket Entry No. 36 at 2–3 (quoting *Campo*, 562 F.3d at 756)). They contend that "any alleged failure by Defendants to procure or maintain excess coverage resulted in no gap in the Chaudharys' coverage under their [federal flood insurance] policy." (*Id.* at 3). Because there was no coverage gap under the Chaudharys' federal flood-insurance policy, those defendants argue, *Grissom* controls and the claims are preempted. (*Id.* at 4). Gallagher and Bettina also dispute the Chaudharys' assertion that their "claims do not implicate federal funds in any way," pointing to the Fifth Circuit's explanation in *Grissom* that "[u]nless FEMA explicitly notifies the insurance company of its intent not to defend or indemnify, FEMA is presumed to pay the litigation expenses and any resulting damages awards." (*Id.* at 4 n.2 (quoting Docket Entry No. 34 at 4; and *Grissom*, 678 F.3d at 397)).

Gallagher and Bettina have the stronger argument. The amended complaint provides scant factual allegations about the allegedly tortious acts apart from those occurring before Hurricane Harvey. (*See* Docket Entry No. 29 at ¶¶ 12–14). The Chaudharys do not provide details about when they purchased their flood insurance policies beyond that their federal policy issued in 2015 and was renewed in 2016. (*Id.* at ¶ 16). The amended complaint states that they had a "long standing business relationship" with Gallagher and Bettina, including the agents' personal visits to evaluate the Chaudharys' home and the homeowners' implicit instructions to purchase the necessary

insurance to cover the home and its contents.  (*Id.* at ¶¶ 10–11).  The amended complaint, however, does not allege when these visits occurred, including whether they were before the Chaudharys purchased their federal policy.  The amended complaint  fails to plead facts about when the alleged excess policy issued and lapsed, or its coverage.   Under Rule 12(b)(6), these are conclusory allegations.  *See Twombly*, 550 U.S. at 555.  Even taking all of the Chaudharys' alleged facts as true, their amended complaint brings claims for allegedly tortious acts that occurred while the Chaudharys were covered by the federal policy.  According to *Grissom*, because the Chaudharys' claims arise from interactions when they were in the midst of a non-lapsed federal Standard Flood Insurance Policy, their claims are precluded.

As Gallagher and Bettina argue, "the Chaudharys' recast allegations about the alleged lapse in excess coverage" continue to suffer from numerous problems.  (Docket Entry No. 26 at 2).  Many district court opinions applying the distinction between procurement and handling have done so at the summary judgment stage.[4]  *See, e.g.*, *Cohen v. Allstate Ins. Co.*, No. H-17-2484, 2018 WL 1144761 (S.D. Tex. Mar. 2, 2018); *Avery v. Am. Nat'l Prop. & Cas.*, No. 10-cv-3548, 2012 WL 12894806, at *9 (S.D. Tex. Feb. 2, 2012).  But the factual disputes that exist do not appear to change the legal analysis.  The existence of an excess flood-insurance policy would not change the fact that the Chaudharys had a federal policy when the alleged actions occurred.  *See Grissom*, 678 F.3d at

---

[4]   The Fifth Circuit in *Spong* explained that "even though not preempted, certain claims cannot succeed as a matter of law."  *Spong,* 787 F.3d at 299.  Under *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), and *Heckler v. Community Health Services of Crawford County*, 467 U.S. 51 (1984), plaintiffs cannot "claim ignorance of the statutes and regulations as an excuse for relying on [the insurance company's] issuance of a policy as a determination or representation that their property was not located" in an uninsurable area.  *Id.* at 309.  This reasoning seems to extend to the Chaudharys' own ignorance of their policy limits.  Because the Write-Your-Own carriers are representatives of the government, and because the applicable policy terms are set out in the Code of Federal Regulations, plaintiffs are charged with "constructive, if not actual, knowledge" of the policy terms.  *Id.*

401 (discussing the importance of the insured's coverage status to assessing the claims-handing or policy-procurement distinction).

### 3.   A Claim-by-Claim Analysis of the Chaudharys' Amended Complaint

#### i.   The Texas Deceptive Trade Practices Act

The Chaudharys allege that Gallagher and Bettina violated the Texas Deceptive Trade Practices Act by:

- "representing that goods or services are of a particular standard, quality, or grade . . . [when] they are of another," TEX. BUS. & COM. CODE § 17.46(b)(7);

- "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law," TEX. BUS. & COM. CODE § 17.46(b)(12);

- "misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a consumer transaction," TEX. BUS. & COM. CODE § 17.46(b)(14);

- "representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve," TEX. BUS. & COM. CODE § 17.46(b)(20); and

- "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed," TEX. BUS. & COM. CODE § 17.46(b)(24).

(*Id.* at ¶¶ 38–39).  Under the same heading in their amended complaint, the Chaudharys also allege that Gallagher and Bettina are liable under the Act for: "[u]sing or employing an act or practice in violation of the Texas Insurance Code"; "[u]nreasonably delaying the investigation, adjustment and resolution of [the Chaudharys'] claim"; and "fail[ing] to properly investigate [the Chaudharys'] claim."  (*Id.* at ¶ 38(d)–(f)).

23

The last two claims—despite the amended complaint's insistence that the claims against Gallagher and Bettina "have nothing to do with any FEMA/SFIP policy," (*id.* at ¶ 32)—involve the handling of the federal flood-insurance policy.  The amended complaint pleads facts about the insurance claim made after Hurricane Harvey, when the Chaudharys had only a federal-flood insurance policy. (*See id.* at ¶¶ 15–16).  The Chaudharys allege that they did have an excess flood-insurance policy that was unrelated to the standard federal flood-insurance policy and that has lapsed. (*Id.* at ¶ 8).  The Chaudharys allege no facts in support of that allegation nor do they allege that there was any claim made on that policy.[5]   Because "the investigation, adjustment and resolution" of a claim is related to the handling of that insurance claim, federal law preempts these Texas-law claim.

Gallagher and Bettina argue that the Chaudharys' other claims under the Texas Deceptive Trade Practices Act relate to the standard federal flood insurance policy.  (Docket Entry No. 31 at 10).  In *Copeland v. Colonnetta*, No. G-10-118, 2010 WL 2521043 (S.D. Tex. June 15, 2010), the court concluded that the plaintiff's Texas Deceptive Trade Practices Act claims against an insurer alleged to have revised the plaintiff's flood insurance policy were policy-procurement claims.  *Id.* at *3.  The plaintiff, Copeland, had purchased homeowner's insurance that included flood insurance, but, after Hurricane Ike, she discovered that the policy did not cover the entire home.  *Id.* at *1.  She alleged that after the flood damages, her insurer revised her policy effective before the hurricane.  *Id.*  Her Texas Deceptive Trade Practices Act claims included allegations that her insurer "represented to [her] that their policies had characteristics or benefits that they did not have," that

---

[5]   The Chaudharys' assertion that there was an excess policy that lapsed appears to be "'a naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  The amended complaint does explain when this excess flood insurance policy was in place, when it lapsed, or the amount of flood insurance it provided.

they "were of a particular standard, quality or grade when [they] were another," and that they "conferred or involved rights, remedies or obligations that they did not have." *Id.* at \*2–\*3.  While the court did not provide an analysis, it concluded that these claims related to procuring the insurance policy, and not to the handling her post-hurricane claim.  *Id.* at \*3.  The alleged misrepresentations were before Copeland purchased any policy, supporting characterizing as policy procurement.  *Id.*  The court found no preemption and remanded.  *Id.*

Under the Rule 12(b)(6) standard used to evaluate complaints on a motion for judgment on the pleadings, the Chaudharys have not pleaded facts sufficient to state a claim for relief under the Texas Deceptive Trade Practices Act.  The amended complaint does not allege when their relationship with Gallagher and Bettina began.  The amended complaint explains only that the "first FEMA/SFIP policy written by Chubb for [the Chaudharys] on their home was in 2015," (Docket Entry No. 29 at ¶ 16), "was then renewed in 2016," and "was the FEMA/SFIP policy in play at the time of the flood." (*Id.*).  The only representations discussed are by Gallagher through its agent, Bettina, when Hurricane Harvey was headed toward Texas.  (*Id.* at ¶ 12).  The other interactions discussed in the amended complaint are devoid of detail, including the allegation that "[Gallagher] and Bettina continuously and expressly assured [the Chaudharys] that they would be fully covered in the event of damage and that there were sufficient insurance policies in place." (*Id.* at ¶ 11).  As discussed above, the amended complaint also does not detail when the Chaudharys had an excess flood insurance policy, when it lapsed, and what coverage that policy provided.

The Chaudharys' Texas Deceptive Trade Practices Act claims do not meet the Rule 12(b)(6) pleading standards or involve periods when the Chaudharys had their federal policy.  Because the

well-pleaded claims involve only those periods when the Chaudharys had a federal policy, judgment

on the pleadings is in favor of Gallagher and Bettina on these claims.

### ii.      Texas Insurance Code Claims

The Chaudharys' claims under the Texas Insurance Code are similarly deficient.  They allege

that Gallagher and Bettina violated that Act through their failure to procure excess flood insurance

and by:

- "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue," TEX. INS. CODE § 541.060(a)(1);

- "failing to attempt, in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear," TEX. INS. CODE § 541.060(a)(2)(A);

- "failing to promptly provide to a policy holder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim," TEX. INS. CODE § 541.060(a)(3);

- "misrepresent[ing] an insurance policy by . . . making an untrue statement of material fact," TEX. INS. CODE § 541.061(1);

- "misrepresent[ing] an insurance policy by . . . making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of material fact," TEX. INS. CODE § 541.061(3);

- "misrepresent[ing] an insurance policy by . . . making a material misstatement of law," TEX. INS. CODE § 541.061(4); and

- "mak[ing], issu[ing], or circulat[ing] or caus[ing] to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy being issued or issued: (A) the terms of the policy; (B) the benefits or advantages promised by the policy; or (C) the dividends or share of surplus to be received on the policy," TEX. INS. CODE § 541.051(1).

(*Id.* ¶ 48).

Several of these claims involve claims handling. The allegations under §§ 541.060(a)(2)(A) and (a)(3) refer to the "settlement" of an insurance claim. TEX. INS. CODE §§ 541.060(a)(2)(A), (a)(3). Section 541.060 is labeled "Unfair Settlement Practices," which appears to fall within claims handling. *Id.* at § 541.060. The Chaudharys have also not pleaded facts sufficient for the court to accept as true that they had at one point an excess flood insurance policy or made a claim under that excess flood policy that could give rise to these claims.

As with the claims under the Texas Deceptive Trade Practices Act, the claims under the Texas Insurance Code that do not directly refer to claims handling or settlement are not supported in the amended complaint with sufficient facts. The only misrepresentations alleged with any specificity are Bettina's alleged assurances that the Chaudhary home was fully covered when Hurricane Harvey was headed toward Houston. (*See* Docket Entry No. 29 at ¶ 12). The other alleged misrepresentations from Gallagher and Bettina allegedly occurred during the parties' "long standing" relationship, but the dates or contents of those statements are not provided. (*See id.* at ¶¶ 9–11). If the claims are meant to relate to the terms of the excess policy, the Chaudharys have not pleaded sufficient facts to describe what misrepresentations and statements about that excess policy were made, let alone whether this policy existed. (*See id.* at ¶ 11). The most detail about the allegedly lapsed excess insurance policy is that Gallagher and Bettina "never told Plaintiffs that they had let the flood insurance coverage slip to only $250,000 for structure, and $100,000 for contents provided by the National Flood Insurance Program." (*Id.*). Because it appears that the alleged misrepresentations relate to the coverage of a federal flood insurance policy, these claims are preempted.

27

### iii.     Misrepresentation and Negligent Misrepresentation

A cause of action for negligent misrepresentation requires pleading facts that: (1) a representation was made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).  The Chaudharys pleaded that Gallagher and Bettina "had many calls and meetings over the years" about the Chaudharys' home; that they "visited the house to see firsthand" to assess its value; that they made assurances "that the house and its contents were fully covered for natural perils"; and that they told the Chaudharys "that they would be covered for any loss arising out of damage" from Hurricane Harvey.  (Docket Entry No. 29 at ¶ 57).

It appears that allegations for this claim relate to Gallagher and Bettina's statements made when the Chaudharys had the federal policy.  As with the other claims, the only allegations pleaded with sufficient factual detail are those related to the Chaudharys' interactions with Bettina before Hurricane Harvey struck.  (*See id.* at ¶ 12).  The amended complaint does not explain when the statements were made, when the house visits occurred, or how the Chaudharys relied on that information (particularly given that reading their policy would have alerted them to their policy limits).  Because the allegations supporting this claim appear to refer to interactions between the parties that occurred when the Chaudharys had their federal policy, these claims are preempted.

### iv.    Common-Law Fraud by Negligent Misrepresentation

The Chaudharys allege that Gallagher and Bettina "perpetrated fraud by misrepresentation (either intentionally or negligently) by falsely representing a fact of materiality" to the Chaudharys, "who relied upon such representations which ultimately resulted in injuries and damages to them." (*Id.* at ¶ 59).  They plead in the alternative that Gallagher and Bettina "fraudulently concealed material facts from [the Chaudharys], the result of which caused damages" to the Chaudharys.  (*Id.*). They allege that Gallagher and Bettina "knew that the misrepresentations . . . were false at the time they were made," and therefore their actions "constitute conduct for which the law allows the imposition of exemplary damages."  (*Id.* at ¶ 62).

The only misrepresentations alleged with sufficient detail occurred when the Chaudharys were evacuating before Hurricane Harvey.  (*See id.* at ¶ 12).  There is no dispute that the Chaudharys were covered under their federal policy at that time.  (*Id.*).  This claim is preempted under *Grissom*.

### v.    Negligence

The Chaudharys allege that Gallagher and Bettina "had a duty to exercise due care in procuring the correct type and amount of insurance" for the Chaudharys' home as the Chaudharys requested.  (Docket Entry No. 29 at ¶ 66).  The Chaudharys allege a breach of this duty "by failing to procure insurance that would properly and wholly protect" the Chaudharys' home "in the event of certain perils," specifically by "fail[ing] to procure insurance which would adequately insure against damages caused by flooding in excess of the standard flood insurance policy limits."  (*Id.*).

The Chaudharys have not pleaded sufficient facts to support their argument that this claim does not implicate the handling of their federal policy.  The Chaudharys do not explain when this alleged breach of duty occurred, as needed to show whether their federal Standard Flood Insurance

Policy had issued.  Based on the facts alleged in the amended complaint, it appears that the Chaudharys are alleging that Gallagher and Bettina did procure an excess policy sufficient to cover the home, but they allowed that excess policy to lapse while the federal policy remained in place. (*See id.* at ¶ 11 (alleging that Gallagher and Bettina "never told Plaintiffs that they had let the flood insurance coverage slip to only $250,000 for structure, and $100,000 for contents provided by the National Flood Insurance Program")).  The Chaudharys also do not plead sufficient facts that they requested this additional coverage.  Because the only sufficiently pleaded facts allege that the breaches of duty occurred while the federal policy was in place, federal law preempts these claims.

### vi.    Breach of Fiduciary Duty

The Chaudharys bring a breach of fiduciary duty claim against Bettina, alleging that he breached a duty of good faith and fair dealing because: (1) "[t]he transaction was not fair and equitable to [the Chaudharys]"; (2) he "did not act in the utmost good faith and did not exercise the most scrupulous honesty" when interacting with the Chaudharys; (3) he "did not place the interests of [the Chaudharys] before his own, and he used the advantage of his position to gain a benefit for himself" at their expense; (4) he "did not make reasonable use of the confidence that [the Chaudharys] placed in him"; and (5) he "placed himself in a position where his self-interest might conflict with his obligations as a fiduciary."  (Docket Entry No. 29 at ¶ 54).

The Chaudharys' amended complaint does not plead facts sufficient to support this claim against Bettina for any period that the Chaudharys were not covered by their federal policy.  The most detailed allegations against Bettina involve his alleged representations to the Chaudharys' son in the days before the Hurricane Harvey landed.  (*Id.* at ¶ 12).  The parties agree that at that time,

the Chaudharys had a federal policy.  Based on a review of the amended complaint under the Rule 12(b)(6) standard, these claims are preempted.

## IV.   Conclusion

The court grants Chubb/Standard Bankers Insurance Company's motion to dismiss and Arthur J. Gallagher & Co. and Bettina's motion for judgment on the pleadings, with prejudice.  Final judgment is entered separately.

SIGNED on December 20, 2018, at Houston, Texas.

_____   *Lee H. Rosenthal*

Lee H. Rosenthal
Chief United States District Judge