Case 4:18-cv-02179 Document 73 Filed on 08/05/21 in TXSD Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
August 05, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YOUNAS CHAUDHARY, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. H-18-2179 |
| ARTHUR J. GALLAGHER & CO., and CHRIS BETTINA | § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

This is an insurance-coverage dispute from Hurricane Harvey. The storm damaged Younas and Buchra Chaudhary's $20 million home, but their federal flood insurance policy had a $350,000 limit. They blame the inadequate policy amount on Chubb & Son, Inc., their insurer; Arthur J. Gallagher & Co. (AJG), their insurance broker; and AJG's employee, Chris Bettina. The Chaudharys allege that the defendants assured them for years that, in addition to their federal insurance policy, they had private excess flood insurance that covered the full value of their home and contents. The Chaudharys allege that the defendants either did not sell them the excess flood insurance policy they described or allowed it to lapse without telling the Chaudharys.

The Chaudharys initially sued Chubb, AJG, and Bettina in a Harris County, Texas state court, asserting claims under the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.01, *et seq.*, and the Texas Insurance Code, TEX. INS. CODE § 541.00, *et seq.*, and claims for common-law misrepresentation, fraud, and negligence. They also asserted a separate claim for breach of fiduciary duty against Bettina.

The defendants timely removed, and AJG simultaneously filed an election of responsibility

1

for Bettina's actions under Texas Insurance Code § 542A.006. (Docket Entry Nos. 1, 1-9). AJG stated that it would "accept legal responsibility of Bettina for whatever liability Bettina might have to Plaintiffs for Bettina's acts or omissions related to Plaintiff's claims." (Docket Entry No. 1-9 at 3).

The Chaudharys moved to remand, which the court denied because the Chaudharys' claims related to the handling of a federal flood insurance policy and were preempted by federal law.[1] (Docket Entry Nos. 8, 20). The Chaudharys filed their first amended complaint, and the defendants again moved to dismiss. (Docket Entry Nos. 29, 32). The court granted the motion, dismissing the claims against Chubb based on the statute of limitations and the claims against AJG and Bettina based on federal preemption. (Docket Entry No. 42).

On appeal, the Fifth Circuit affirmed the dismissal of the claims against Chubb, as well as the claims-handling allegations against AJG and Bettina. *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 835 (5th Cir. 2020). The Fifth Circuit remanded to this court to determine if a portion of the Chaudharys' claims were related to "private excess flood insurance," claims that are not preempted by federal law. *Id*. at 835–36. The Chaudharys filed a second amended complaint. (Docket Entry No. 56-2). AJG moved to dismiss, the Chaudharys responded, and AJG replied. (Docket Entry Nos. 69, 70, 72).

Based on the amended complaint, the motion, and the applicable law, the motion to dismiss is granted in part and denied in part. The Chaudharys' claims against Bettina are dismissed, and their breach-of-fiduciary duty claims against AJG are dismissed. Their claims against AJG for common-law misrepresentation, negligence, and violations of the Deceptive Trade Practices Act

---

[1] Federal law preempts certain state-law claims under a Standard Flood Insurance Policy as a matter of law because these policies are paid out of the federal treasury. Federal law does not preempt claims under excess flood insurance policies.

2

and Texas Insurance Code survive. The reasons are explained below, and a status conference is set for Thursday, August 12, 2021, at 11:00 a.m. over Zoom to set a schedule to resolve the remaining claims. A Zoom link will be sent to the parties in advance.

**I.      Background**

Like many in the Houston area, the Chaudharys returned to Houston after Hurricane Harvey to discover extensive flood damage to their home and possessions. (Docket Entry No. 56-2 at ¶ 42). The Chaudharys allege that, when they evacuated before the storm, they did not worry about the financial impact of flood damage because their insurance broker, AJG, and its employee, Bettina, had assured them that their home and contents were fully covered by private excess flood insurance. (*See id*. at ¶ 46). The Chaudharys allege that, after the storm, they filed an insurance claim with Chubb, their insurance provider. (*Id.* at ¶¶ 43–46). The Chaudharys received a letter notifying them that they had a Standard Flood Insurance Policy but no private excess flood insurance. (*Id*. at ¶¶ 43, 45). The National Flood Insurance Program policy had a limit of $350,000 and did not cover all the damage to the home and contents. (*Id.*).

The Chaudharys allege that, in 2015, they first sought flood insurance coverage from the defendants. (*Id.* at ¶ 16). The Chaudharys allege that they "requested" AJG and Bettina to provide "private excess insurance that would completely reimburse Plaintiffs for any loss to their home or possessions resulting from a flooding event . . . ." (*Id*. at ¶ 16). They allege that their request for private excess flood insurance was a "standing request." (*Id.* at ¶ 17). In 2016 and 2017, the Chaudharys allege that they again requested private excess flood insurance. (*Id.* at ¶¶ 17, 18).

The Chaudharys allege that, in 2015, AJG and Bettina procured a National Flood Insurance Program policy with $250,000 of coverage for their home's structure and $100,000 for its contents. (*Id.* at ¶ 20). They allege that the defendants also procured a private excess flood insurance policy

3

for an undisclosed amount. (*Id*. at ¶¶ 20, 22). The Chaudharys allege that, in 2016 and 2017, AJG and Bettina renewed the National Flood Insurance Program policy but allowed the private excess flood insurance policy to lapse. (*Id*. at ¶¶ 25, 26, 28).

The Chaudharys allege that AJG and Bettina "repeatedly" and expressly assured them that they had sufficient insurance to fully cover the home and its contents. (*Id*. at ¶¶ 19, 35). The Chaudharys also allege that the defendants promised to renew "any excess flood insurance policy" on the Chaudharys' home. (*Id.* at ¶¶ 26, 27). The Chaudharys allege that AJG provided the Chaudharys with estimates, illustrations, and statements misrepresenting the terms and benefits of the private excess flood insurance policy. (*Id*. at ¶¶ 30, 31). They allege that AJG and Bettina made these representations beginning in 2015 and immediately before Hurricane Harvey's landfall. (*Id*. at ¶¶ 34, 35). The Chaudharys also allege that AJG and Bettina did not disclose the limits on their flood insurance coverage. (*Id.* at ¶ 33).

The Chaudharys allege that they had a "special relationship of trust and confidence" with AJG and Bettina based on their "avowed expertise, their services over the years, and their representations about their ability to provide thorough and comprehensive insurance to protect [the Chaudharys] from hazards such as floods, hurricanes, and the like." (*Id*. at ¶ 12).

## II. The Legal Standards

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

4

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

5

### III. Analysis

#### A. Election of Responsibility

AJG elected to accept responsibility for Bettina's liability, if any, to the Chaudharys under § 542A.006(b) of the Texas Insurance Code. (Docket Entry No. 1-9). Because AJG elected to accept responsibility for Bettina's actions, the court is required to "dismiss the action against" Bettina "with prejudice." TEX. INS. CODE § 542A.006(c). The Chaudharys do not contest that the claims against Bettina should be dismissed. (Docket Entry No. 70 at 2 n.2).

The Chaudharys' claims against Bettina are dismissed.

#### B. Preemption

AJG asserts that some of the Chaudharys' claims implicate the federal flood policy and are preempted by federal law. (Docket Entry No. 69 at 24). The Fifth Circuit distinguishes between state-law flood insurance claims involving "claims handling," which are preempted, and those involving "insurance procurement," which are not preempted. *Chaudhary*, 832 F. App'x at 834. "The key factor to determine if an interaction with an insurer is 'claims handling' is the status of the insured at the time of the interaction between the parties." *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 401 (5th Cir. 2012). "If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are 'claims handling' subject to preemption." *Id.; see also Campo v. Allstate Ins. Co.*, 562 F.3d 751, 756 (5th Cir. 2009) ("[The plaintiff's] coverage had *expired*; there was thus nothing to continue. Instead, as a former policyholder, [the plaintiff] would have had to *procure* flood insurance." (emphasis in original)).

While the Chaudharys were covered by a National Flood Insurance Policy, their claims relate solely to a private excess flood insurance policy. (Docket Entry No. 56-2 at ¶¶ 43, 48). The

Chaudharys allege that AJG either never procured the private excess flood insurance policy they requested, despite assuring them that it had, or allowed the policy to lapse before Hurricane Harvey.  (*Id.* at ¶¶ 25–26).  The Chaudharys allege that they sought a separate insurance policy, not an upgrade to their National Flood Insurance Program policy, which was in effect during Hurricane Harvey.  A private excess flood insurance policy, unlike the National Flood Insurance Program policy, does not implicate federal funds.  *See Chaudhary*, 832 F. App'x at 833 ("The NFIP includes 'Write-Your-Own' . . . policies that allow private insurers to sell flood insurance policies that the federal government underwrites.").  Because the Chaudharys' claims relate to the AJG's failure to procure or renew a private excess flood insurance policy and do not involve interpretation or management of their National Flood Insurance Program policy, their claims involve insurance procurement and are not preempted.  *See Campo*, 562 F.3d at 756 ("To the extent that this case involves handling of a 'claim,' it is merely a 'fictitious claim' in the sense that the act of filing a claim on an *expired* policy, i.e., a dormant policy, is equivalent to filing no claim at all. . . . [The plaintiff's] policy had expired . . . [The defendant] was thus by definition incapable of *handling* any new claims based on post-expiration occurrences." (emphasis in original)); *Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 535 (E.D. La. 2006) ("The Court notes that many aspects of NFIPs are heavily regulated by FEMA; however, the obtaining of coverage does not involve the interpretation or management of an active NFIP.").

  C.  **The Common-Law Misrepresentation Claims**

The Chaudharys allege that, on multiple occasions, AJG and Bettina misrepresented the amount of insurance coverage they procured.  The Chaudharys assert claims against AJG and Bettina for both negligent and fraudulent misrepresentation.  AJG argues that the Chaudharys did not adequately plead justifiable reliance and did not meet Rule 9(b)'s heightened pleading

7

requirements.

### 1. Fraudulent Misrepresentation

To establish fraudulent misrepresentation, a plaintiff must show that: (1) the defendant made a false, material representation; (2) the defendant knew the representation was false or made it "recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant intended to induce the plaintiff to act on the representation; and (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury. *JPMorgan Chase Bank, N.A. v. Orca Assets,* 546 S.W.3d 648, 653 (Tex. 2018) (citing *Ernst & Young, LLP v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001)).

A representation is material if it was important to the plaintiff in the decision-making process, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (citations omitted). A representation can be material even if it was not the only reason the plaintiff entered into the transaction. *See Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 727–28 (Tex. App.—Waco 1998, pet. denied) (citations omitted). A representation is false if it consists of words or other conduct that suggest to the plaintiff that a fact is true when it is not. *See Custom Leasing, Inc. v. Tex. Bank & Tr. Co.*, 516 S.W.2d 138, 142 (Tex. 1974) (citations omitted).

Texas courts recognize the principle that a "party claiming fraud has a duty to use reasonable diligence in protecting [his or her] own affairs." *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962) (citations omitted). A "failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Id*. A plaintiff cannot "blindly rely on a representation by a defendant" when the plaintiff's knowledge alerts it to investigate the

8

representations before relying on them. *See Orca Assets*, 546 S.W.3d at 654.

The Chaudharys' fraudulent misrepresentation claims must also meet Rule 9(b)'s heightened pleading standard. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 116–17 (5th Cir. 2019) (Rule 9(b) "imposes a heightened pleading standard in cases where plaintiff alleges fraud or mistake: particularity."). Rule 9(b) states that:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b).

"When the Rule 9(b) pleading standard applies, the complaint must contain factual allegations stating the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Matter of Life Partners,* 926 F.3d at 117 (alteration omitted) (quoting *Tuchman v. DSC Comm'cns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "[T]o properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct." *Id*.

The Chaudharys' allegations state a claim for fraudulent misrepresentation that satisfies the Rule 9(b) requirements. The Chaudharys allege that they hired AJG and Bettina because of their "expertise" in the insurance business. (Docket Entry No. 56-2 at ¶ 40). The Chaudharys allege that they "requested" AJG and Bettina to provide "private excess insurance that would completely reimburse Plaintiffs for any loss to their home or possessions resulting from a flooding event . . . ." (*Id.* at ¶ 16). They allege that Bettina visited their home to "assess its contents and value." (*Id.* at ¶ 13). They allege that, in 2015, AJG and Bettina procured a National Flood Insurance Program policy and a private excess flood insurance policy. (*Id*. at ¶¶ 16–17, 20–22). The Chaudharys allege that, in 2016 and 2017, they again hired AJG and Bettina to procure

9

sufficient flood insurance to cover the loss of their home and possessions in the event of flooding. (*Id*. at ¶¶ 16–17). AJG and Bettina allegedly informed the Chaudharys, at year-end annual reviews and at multiple periodic meetings over the course of three years, that they had procured the requested insurance. (*Id*. at ¶ 19). After Hurricane Harvey, the Chaudharys discovered that AJG and Bettina had not renewed or had never purchased a private excess flood insurance policy. (*Id.* at ¶ 28).

The Chaudharys allege that AJG and Bettina made several representations that turned out to be false:

- AJG and Bettina "repeatedly" and expressly assured them that the Chaudharys' insurance policies "would completely reimburse [them] for any loss to their home or possessions resulting from a flooding event." (*Id*. at ¶ 19; *see also id.* at ¶ 35).

- AJG and Bettina promised to purchase excess flood insurance to cover their home and contents. (*Id.* at ¶¶ 23, 26).

- AJG and Bettina promised to renew "any excess flood insurance policy" on the Chaudharys' home. (*Id.* at ¶¶ 26, 27).

- AJG and Bettina provided the Chaudharys with estimates, illustrations, and statements misrepresenting the terms and benefits of the private excess flood insurance policy. (*Id*. at ¶¶ 30, 31).

The Chaudharys allege that Bettina repeatedly made these representations beginning in 2015 until immediately before Hurricane Harvey's landfall. (*Id*. at ¶¶ 34, 35). The Chaudharys allege that these discussions occurred at their "home," at the "Atlas Company offices," (*id*. at ¶ 27), "in person," and "on the phone," (*id*. at ¶ 13). The Chaudharys allege that AJG and Bettina knew their representations were false or made them recklessly, without any knowledge of the truth and

as a positive assertion. (*Id.* at ¶ 70). The Chaudharys also allege that, had they known that they did not have private excess flood insurance coverage, they would have "taken steps to mitigate damages and prevent or minimize the sizeable losses that they sustained." (*Id.* at ¶ 46).

While AJG argues that the Chaudharys had a duty to read their insurance policy, the Chaudharys allege that they never received a copy of the insurance policy. (Docket Entry No. 70 at 4); *see Aspen Specialty Ins. Co. v. Muniz Eng'g Inc.*, 514 F. Supp. 2d 972, 986 (S.D. Tex. 2007) ("[The plaintiff] had no duty to read a policy it did not have."). Even if the Chaudharys had received the policy, their failure to read that policy would not bar their negligence claim; instead, the failure to read would bear on their contributory negligence. *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456, 469 & n.27 (Tex. App.—Corpus Christi 2008, pet denied) ("[A]n inquiry as to whether [insureds] are legally presumed to have read and have knowledge of the [policy] touches upon a matter that traditionally goes to the issue of contributory negligence."); *see also Edwea, Inc. v. Allstate Ins. Co.*, No. 10-CV-2970, 2010 WL 5099607, at *11 (S.D. Tex. Dec. 8, 2010) ("[T]he defendants have not presented any basis to conclude that the plaintiffs' negligence claim against [the insurance agent] results solely from their failure to read the insurance policy or their mistaken belief about the policy's coverage."). The Chaudharys also allege that AJG never procured a private excess flood insurance policy. The Chaudharys could not read a policy that allegedly did not exist.

AJG argues that the Chaudharys did not identify sufficiently specific representations to state a claim for fraudulent misrepresentation. The Chaudharys allege that AJG did more than represent the policy provided "full coverage."[2] The Chaudharys allege that AJG and Bettina not

---

[2] While some cases have held that "full coverage" is not sufficiently specific to be an affirmative representation of a policy's terms, the Chaudharys allege that AJG and Bettina assured them that they would be reimbursed for "any loss" to their home and possessions. This alleged misrepresentation is more specific than "full coverage." *See New World Baptist Church, LLC v. Nationwide Prop. & Cas. Ins. Co.*, No. 17-

11

only represented that they were "fully covered," but that they had "private excess flood insurance," (Docket Entry No. 56-2 at ¶ 16), "that would completely reimburse [the Chaudharys] for any loss to their home or possessions resulting from a flooding event," (*id.* at ¶¶ 12–14, 16). These representations were made after the Chaudharys "identif[ied] the assets they wanted insured" and Bettina selected "the policy limits, coverages, and rates." (*Id.* at ¶ 12). In the context of their multiple discussions, AJG and Bettina's assurances that they had procured the requested insurance and that they would provide the Chaudharys with full coverage amounted to more than vague representations. When an insurance agent states that the insurance policy provides "full coverage," and "full coverage" has a specific meaning, a claim for that representation is actionable. *See Wyly v. Integrity Ins. Sols.*, 502 S.W.3d 901, 908 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding that the trial court erred in finding no misrepresentation when the insurer assured the insured that the insurance policy provided coverage from "loading to unloading" and in "all of the scenarios appellant posited"); *see also New World Baptist Church*, 2017 WL 2063012, at *4 ("The misrepresentations that the complaint attributes to [the insurance agent] specifically address the comprehensive nature of the wind and hail coverage provided by the specific wind and hail provisions of the Policy. As such, these are actionable representations of material fact.").

### 2. Negligent Misrepresentation

Under Texas law, a party claiming negligent misrepresentation must allege that: (1) the defendant made a representation in the course of his business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied false information to guide others in their business; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss due to justifiable reliance on the information. *See Gen.*

---

CV-00187, 2017 WL 2063012, at *4 & n.5 (W.D. Tex. May 12, 2017) (explaining that "full coverage" is an "industry-specific statement about a particular type of [car insurance] policy").

12

*Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005). Justifiable reliance ordinarily presents a question of fact for the jury to decide. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 497 (Tex. 2019). When claims for fraud and negligent misrepresentation arise from the same factual allegations, the pleading standard under Rule 9(b) applies to each claim. *See Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010).

AJG argues that the Chaudharys did not adequately plead justifiable reliance because Bettina's alleged oral representation is contradicted by the express terms of the National Flood Insurance Program policy. As noted above, the Chaudharys allege that AJG and Bettina affirmatively represented that they had purchased and renewed a private excess flood insurance policy but either never procured it or did not renew it. The Chaudharys also allege that AJG and Bettina never delivered a copy of the private excess flood insurance policy, if they procured it in the first place. *See Aspen*, 514 F. Supp. 2d at 986 (there is no duty to read a policy the insured does not have); *Edwea*, 2010 WL 5099607, at *10 (rejecting a duty-to-read defense to an affirmative misrepresentation claim). The Chaudharys adequately pleaded justifiable reliance.

  **D.**  **The Common-Law Negligence Claim**

To plead a common-law negligence claim, the Chaudharys must allege facts sufficient to show that AJG owed a duty and breached that duty, which proximately caused them damages. *D. Hous., Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) ("A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach."). The Chaudharys allege that AJG and Bettina were negligent in failing to procure the insurance the Chaudharys requested. (Docket Entry No. 56-2 at ¶ 53). AJG argues that the Chaudharys did not adequately allege a duty or causation.

13

### 1. Duty

Texas courts impose "liability on insurance agents for failing to secure sufficient coverage in narrow circumstances." *Edwea, Inc.*, 2010 WL 5099607, at *11. No "legal duty exists on the part of an insurance agent to extend the insurance protection of his customer merely because the agent has knowledge of the need for additional insurance of that customer, especially in the absence of evidence of prior dealings where the agent customarily has taken care of his customer's needs without consulting him." *Choucroun v. Sol L. Weisenberg Ins. Agency-Life & Health Div., Inc.*, No. 01-03-00637-CV, 2004 WL 2823147, at *4 (Tex. App.—Houston [1st. Dist.] Dec. 9, 2004, no pet.) (quoting *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex. App.—Tyler 2004, pet. denied)). Insurance agents, however, owe a duty to their clients to "use reasonable diligence" to procure "the requested insurance and to inform" their clients "promptly if unable to do so." *May v. United Servs. Ass'n of Am.*, 844 S.W.2d 666, 669 (Tex. 1992).

The Chaudharys allege that they requested insurance that would reimburse them for "any loss" to their "home and possessions." (Docket Entry No. 56-2 at ¶ 13). They allege that, over the course of multiple discussions with Bettina, they picked assets they wanted covered, and asked Bettina to procure appropriate policies. (*Id.* at ¶ 12). Bettina and the Chaudharys met many times and talked regularly on the phone, and Bettina visited the Chaudharys' house to assess its contents and value to place the insurance. (*Id.* at ¶ 13). The Chaudharys allege that Bettina and AJG would "customarily take care of" the Chaudharys' insurance needs without consulting them. (*Id.* at ¶ 14). The coverage amounts were allegedly "left up to the expertise and discretion of Bettina, who repeatedly assured [the Chaudharys] they were covered under the 'worst case scenarios' that could damage the home and its contents." (*Id.*). The Chaudharys allege that AJG and Bettina did not provide or renew the coverage they requested. (*Id.* at ¶ 53). They also allege that AJG and Bettina

14

never notified them that they did not have the requested insurance in place as promised. (*Id.*).

These allegations raise a plausible inference that AJG did not use reasonable diligence to procure private excess flood insurance, as requested and represented, and did not notify the Chaudharys that their home and contents were not covered as requested. *See Edwea, Inc.*, 2010 WL 5099607, at *11 (denying an insurance agent's motion to dismiss when the plaintiff alleged that the agent "misrepresented to Plaintiffs, prior to Hurricane Ike, that sufficient commercial coverage existed to protect them from related damages"); *May*, 844 S.W.3d at 669 (discussing *Burroughs v. Bunch*, 210 S.W.2d 211 (Tex. App.—El Paso 1948, writ ref'd) (finding an insurance agent liable for fire damage to a house under construction because the agent represented to the customer that the agent would have a builder's risk policy issued on the house but failed to notify the customer that he failed to procure such a policy)).

    **2.**    **Causation**

AJG argues that the Chaudharys cannot establish causation because, under Texas law, it is the insured's duty to read and be familiar with the terms of the insurance policy, *see Coachmen Indus., Inc. v. Willis of Ill., Inc.*, 565 F. Supp. 2d 755, 768 (S.D. Tex. 2008), and an insurer is not liable for a policyholder's mistaken belief about the scope or availability of coverage, *see, e.g.*, *Moore v. Whitney-Vaky Ins. Agency*, 966 S.W.2d 690, 692–93 (Tex. App.—San Antonio 1998, no pet.). (Docket Entry No. 69 at 8).

As discussed above, the Chaudharys allege that they never received a copy of the insurance policy and, if they did, their failure to read it bears on their contributory negligence, not their ability to state a claim. (Docket Entry No. 70 at 4, 9); *see Aspen Specialty Ins. Co.*, 514 F. Supp. 2d at 982 ("[The plaintiff] had no duty to read a policy it did not have."); *Kloesel*, 266 S.W.3d at 469 & n.27 ("[A]n inquiry as to whether [insureds] are legally presumed to have read and have knowledge

of the [policy] touches upon a matter that traditionally goes to the issue of contributory negligence."); *see also Edwea, Inc.*, 2010 WL 5099607, at *12 ("[T]he defendants have not presented any basis to conclude that the plaintiffs' negligence claim against [the insurance agent] results solely from their failure to read the insurance policy or their mistaken belief about the policy's coverage.").

The Chaudharys adequately pleaded their negligence claim. AJG's motion to dismiss the negligence claim is denied.

### E. The Breach of Fiduciary Duty Claim

The Chaudharys assert a breach of fiduciary duty claim against Bettina based on their "longstanding relationship of trust and confidence" that existed "prior to and apart from the insurance agreement that is the basis of this lawsuit." (Docket Entry No. 56-2 at ¶ 57).

A "fiduciary duty is an extraordinary duty that is not lightly created." *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d 311, 318 (Tex. 2004) (citations omitted). While no formal fiduciary relationship exists "between an insurer and its insured," *EC & SM Guerra, LLC v. Phila. Indem. Ins. Co*, No. 20-CV-00660, 2020 WL 6205855, at *4 (W.D. Tex. Oct. 21, 2020), an informal fiduciary relationship "may arise where one person trusts in and relies upon another, whether the relationship is moral, social, domestic, or purely a personal one," *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (citation omitted). To impose an informal fiduciary duty, a "special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 288 (Tex. 1998). Not "every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005). Neither subjective trust nor a long, "cordial" relationship

necessarily creates a fiduciary relationship. *Hogget v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). An informal fiduciary relationship may exist between an insurance agent and his client when the client is "accustomed to being guided by the judgment or advice of the [agent] or is justified in placing confidence in the belief that [the agent] will act in its interest." *Aspen*, 514 F. Supp. 2d at 983 (citation omitted).

The Chaudharys failed to allege a fiduciary relationship before or apart from the insurance policies at issue. The Chaudharys allege that Bettina served as their insurance agent from 2013 until Hurricane Harvey, held himself out as an expert in determining the appropriate coverage for them, was responsible for renewing their insurance policies, and assured them that they would be "fully covered in the event that their home sustained any type of damages from the storm, including flooding." (Docket Entry No. 56-2 at ¶¶ 12, 13, 27, 29, 35). These alleged actions do not rise above the actions taken in a typical relationship between an insurance agent and insured. *See Env't Procs., Inc. v. Guidry*, 282 S.W.3d 602, 627 (Tex. App.—Houston [14th Dist.] 2009) (an insurance agent's "expertise in the insurance industry" does not establish an informal fiduciary relationship); *Choucroun*, 2004 WL 2823147, at *8 ("[The plaintiff] may have had a long-standing relationship with [the insurance agent], but there is nothing to show that [the agent] undertook any duties over and above those of any insurance agent."); *Hitchcock Indep. School Dist. v. Arthur J. Gallagher & Co.*, No. 3:20-CV-00125, 2021 WL 1095320, at *5 (S.D. Tex. Feb. 26, 2021) ("The fact that [the agent] assisted [the insured] in procuring insurance in the past is insufficient, by itself, to give rise to a fiduciary relationship.").

AJG's motion to dismiss the breach of fiduciary duty claim is granted.

### G. The DTPA and Insurance Code Claims

The Chaudharys also allege that AJG and Bettina violated several provisions of the Texas

Deceptive Trade Practices Act and Texas Insurance Code, prohibiting a form of misrepresentation. TEX. BUS. & COM. CODE § 17.46(a)–(b), § 17.50(a); TEX. INS. CODE § 541.003, § 541.051, § 541.061.

AJG argues that the Deceptive Trade Practices Act and Insurance Code claims should be dismissed because the Chaudharys allegedly failed to read the insurance policies at issue. (Docket Entry No. 69 at 27). When an insured's claims are "based upon an affirmative misrepresentation of coverage," as opposed to a failure to disclose, the insured's failure to read the policy at issue does not bar Deceptive Trade Practices Act or Insurance Code claims. *See Wyly*, 502 S.W.3d at 913; *see also Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1036 (W.D. Tex. 2020) (distinguishing between affirmative and negligent misrepresentation claims and finding that the failure-to-read defense applied only to negligent misrepresentation claims).

The Chaudharys allege that the defendants affirmatively misrepresented that "(1) [an] excess flood insurance policy had been procured and (2) the coverage provided by that excess flood insurance policy would completely reimburse [the Chaudharys] for any loss to their home or possessions from a flooding event." (Docket Entry No. 56-2 at ¶ 19). The Chaudharys allege that AJG and Bettina "repeatedly" and expressly assured them that they had sufficient coverage for their home and its contents, (*id*. at ¶¶ 19, 35), and that AJG and Bettina promised to renew "any excess flood insurance policy" on the Chaudharys' home, (*id.* at ¶¶ 26, 27). The Chaudharys allege that AJG and Bettina provided estimates misrepresenting the terms and benefits of the private excess flood insurance policy. (*Id*. at ¶¶ 30, 31).

AJG also argues that Bettina's statement that the Chaudharys were "fully covered" was a "generalized statement" that cannot support a claim under the DTPA or Insurance Code. (Docket Entry No. 69 at 18). As noted above, the Chaudharys allege that AJG did more than vaguely

18

represent that the policy provided "full coverage." The Chaudharys allege that AJG and Bettina not only represented that they were "fully covered," but that they had "private excess flood insurance," (Docket Entry No. 56-2 at ¶ 16), "that would completely reimburse [the Chaudharys] for any loss to their home or possessions resulting from a flooding event," (*id*. at ¶¶ 12–14, 16). And in the context of their multiple discussions, these statements had specific meaning. *See Wyly*, 502 S.W.3d at 908 (holding that the trial court erred in finding no misrepresentation when the insurer assured the insured that the insurance policy provided coverage from "loading to unloading" and in "all of the scenarios appellant posited"); *see also New World Baptist Church*, 2017 WL 2063012, at *4 ("The misrepresentations that the complaint attributes to [the insurance agent] specifically address the comprehensive nature of the wind and hail coverage provided by the specific wind and hail provisions of the Policy. As such, these are actionable representations of material fact.").

### H. Statute of Limitations

If a claim asserted in an amended pleading arises "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," it may relate back to the original pleading date. *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). If a change in the claim is so substantial that the prior claim did not give the defendants adequate notice of the conduct that formed the claim's basis, then the amendment will not relate back. *Id*. at 1386. Identifying "additional sources of damages that were caused by the same pattern of conduct identified in the original complaint" may relate back to the original complaint date. *Id*.

AJG argues that the Deceptive Trade Practices Act, Insurance Code, and misrepresentation claims cannot relate back to the original filing date because the Chaudharys "now complain of different conduct than had been alleged in prior iterations of their claims." (Docket Entry No. 69

at 26).

The Chaudharys' newly pleaded DTPA and Insurance Code claims arise out of the same alleged pattern of alleged misconduct set forth in the original pleading, which was filed in November 2018, well within the two-year statute of limitations. *See* TEX. BUS. & COM. CODE § 17.565; *see also* TEX. INS. CODE § 541.162(a)(1)-(2). AJG and Bettina argue that the Chaudharys allege, for the first time, that they specifically requested private excess flood insurance. But the Chaudharys have raised the issue of private excess flood insurance from the outset. (Docket Entry Nos. 8, 20, 42). The Chaudharys clarified and added detail to their claims regarding the same conduct alleged in their earlier complaints. The second amended complaint relates back to the original filing date and is timely.

## IV. Conclusion

AJG's motion to dismiss, (Docket Entry No. 69), is denied in part and granted in part. The Chaudharys' claims against Bettina are dismissed. Their breach-of-fiduciary duty claims against AJG are dismissed. A status conference to put a scheduling order in place to resolve the remaining claims is set for **August 12, 2021, at 11:00 a.m**. by Zoom. A Zoom link will be sent to the parties.

SIGNED on August 5, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge