United States District Court
Southern District of Texas
**ENTERED**
October 11, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YOUNAS CHAUDHARY and BUSHRA CHAUDHARY, | § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. H-18-2179 |
| v. | § § | |
| ARTHUR J. GALLAGHER & CO., | § § | |
| Defendant. | § § | |

**ORDER**

Younas and Bushra Chaudhary brought this insurance action after Hurricane Harvey floods damaged their home. The remaining defendant is the Chaudharys' insurance broker, Arthur J. Gallagher & Co. (*See* Docket Entry No. 73).[1] The Chaudharys' claims against Gallagher concern its alleged failure to provide the right type of insurance, insurance that would cover flood damage to the Chaudharys' apparently quite valuable home and possessions. With trial rapidly approaching, Gallagher has moved to exclude the opinions of two of the Chaudharys' expert witnesses. (Docket Entry No. 90). Based on the motion, the parties' briefs, the record, and the applicable law, the court denies the motion to exclude. The reasons are set out below.

**I.  The Legal Standards**

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[1] Counsel for Gallagher appears to have mistakenly designated the motion to exclude the opinions of the plaintiffs' experts as on behalf of Gallagher and a former defendant, Chris Bettina. (Docket Entry No. 90). The claims against Bettina were dismissed. (Docket Entry No. 73).

      (b)    the testimony is based on sufficient facts or data;

      (c)    the testimony is the product of reliable principles and methods; and

      (d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The reliability of expert testimony is guided by: "(1) whether the technique in question has been tested; (2) whether the technique has been subject to peer review and publication; (3) the error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has been generally accepted . . . ." *United States v. Perry*, 35 F.4th 293, 329 (5th Cir. 2022) (citing *Daubert v. Merrill Dow Pharms.*, 509 U.S. 579, 593–94 (1993)). Not all factors apply in every case. "Life and the legal cases that it generates are too complex to warrant so definitive a match." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). The applicability of the *Daubert* factors is a legal question for the trial court to determine. *Id.* at 153.

"[D]istrict courts act as gatekeepers to determine the relevance and reliability of expert testimony." *United States v. Herman*, 997 F.3d 251, 269 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 787 (2022). Although "district courts are afforded 'wide latitude' when it comes to the admissibility of expert testimony," *United States v. Barnes*, 979 F.3d 283, 307 (5th Cir. 2020), "the rejection of expert testimony is the exception rather than the rule," *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting reference omitted). This is especially true in a case set for a jury trial. "[T]he court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant . . . ." *Id.* When expert opinions are "shaky but admissible," counsel still has access to the "traditional and appropriate means" for attacking that testimony—"cross-examination, presentation of contrary evidence, and careful [jury]

instruction[s]." *Daubert*, 509 U.S. at 596. With sufficient protections in place, the court need not be "pessimistic about the capabilities of the jury and of the adversary system generally." *Id.*

## II. Analysis

Gallagher seeks to exclude the testimony of two witnesses designated as having specialized knowledge on damages, James Wesseleski and Angelica Ximenes Chapman. Wesseleski is designated as offering expert testimony on the costs of repairing the flood damage to the residence. Chapman is designated as offering expert testimony on the damage to the personal property that was in the residence when it flooded.

### A. Wesseleski

Gallagher's primary issue with Wesseleski's testimony is not reliability, but relevance. Wesseleski is designated to testify about the estimated costs to repair the house. Gallagher argues that testimony about the estimated costs is irrelevant because the Chaudharys have actually done the repairs and know the actual costs they incurred. The Chaudharys respond that the estimates of what it would cost to restore the house and contents to their pre-flood condition are relevant because the repairs did not restore the home and contents to that condition. (Docket Entry No. 91). Gallagher argues that, even so, the insurance policy limits the Chaudharys to recovering the repair costs they in fact paid, policy limits, or the amount reasonably expected to be paid to have the property repaired to the pre-loss condition, whichever is less.

Gallagher points to this policy provision:

(1) Covered losses will be settled on a *replacement cost basis*, except as provided in (2) or (3) below. If you choose to repair or replace the *residence premises*, payment will not exceed the least of the following:

(a) The amount that we could reasonably be expected to pay to have the property repaired to its condition immediately prior to loss;

(b) The actual cost to replace the property; or

> (c) The limit of insurance that applies to the covered property as agreed to by you and us, including an increase that may apply as described under provision d. Full Replacement Cost Protection below.

(Docket Entry No. 90-1, at 41).

There are two problems with Gallagher's reliance on this provision. First, the meaning and applicability are disputed. It is unclear whether the "actual cost to replace" in (1)(b) is limited to the "actual cost to restore the property to the condition it was in immediately before the loss, as set out in (1)(a). It is also unclear how (1)(c) applies. Second, Gallagher was not an insurer facing a breach of contract claim. Gallagher is the broker, facing claims of misrepresentation, negligence, and Texas Deceptive Trade Practices Act and Insurance Code violations for obtaining incorrect or inadequate coverage. (Docket Entry No. 73). For this defendant and these claims, Wesseleski's testimony as to the estimated costs to return the house to its pre-flood condition is relevant to the damages sought. Wesseleski's expert opinions on damages are are relevant and reliable. Gallagher has all the "traditional and appropriate means" to challenge Wesseleski's testimony—"cross-examination, presentation of contrary evidence, and careful [jury] instruction[s]." *See Daubert*, 509 U.S. at 596. Exclusion is not warranted.

### B. Chapman

Chapman is designated to testify as to the estimated damage to the Chaudharys' personal property from the flood. Gallagher raises the following issues with this testimony:

- Chapman estimated the cost of damaged clothes and shoes by measuring the size of the closet space and estimating the number of designer items that could fit and were present in the closets, based on the inventory that the Chaudharys and their house assistant provided.

- Chapman may have double-counted some items because she found boxes of clothing that were returned from a cleaning company, and it is not clear if Chapman added the materials in the boxes to her total count of items in the closet or if her initial calculation of the amount of items in the closet took into account that some items had been sent for cleaning.

- Chapman made arithmetic mistakes in calculating the damages to clothing and shoes by multiplying the average cost of items per box by the wrong number of boxes.

- Chapman counted 37 taxidermy items, but provides photographs of only 6 damaged taxidermy items.

- Chapman did not provide a good explanation for assigning a value of $500,000 to 25 rugs that were either damaged beyond repair or were damaged and had to be repaired.

(Docket Entry No. 90). These issues go to the weight, not the admissibility, of Chapman's opinions. Gallagher has pointed to a number of areas for cross examining Chapman, but Gallagher has not shown that Chapman failed to follow the Uniform Standards of Professional Appraisal Practice. Nor has Gallagher challenged those standards as not being generally accepted in the appraisal community or as having a high error rate.

Gallagher's challenge to Chapman's calculations does not justify excluding her opinions. Chapman's report states that she multiplied her estimate of 34 boxes of clothing that had been damaged in the flood by $63,180 (the costs of repair or replacement she assigned after looking at a sample of boxes and averaging the results) for a total of $2,148,120. (Docket Entry No. 90-5, at 9). That arithmetic is correct. The court can take judicial notice that 34 x $63,180 = $2,148,120.

Gallagher's comment that "[a]rithmetic may not be Chapman's strong suit" is unwarranted. (Docket Entry No. 90, at 11). A more precise framing of Gallagher's criticism is that Gallagher is unsure how Chapman determined that there were 34 boxes of damaged clothes and shoes, because her report also referred to 14 (and then 24) boxes. Chapman's report explains that 14 boxes that were actually returned from the cleaners, and that there were more clothes that either had not yet been returned from the cleaners or were still in the closet in damaged condition. (Docket Entry No. 90-5, at 8). The report also explains that Chapman used two methods—sampling and blocking—to estimate the total number of boxes of damaged clothes and shoes. These issues may be probed by cross-examination. These issues may affect the weight to be given to the opinion testimony, but they do not preclude its admissibility. *See Daubert*, 509 U.S. at 596.

On the current record, the motion to exclude experts, (Docket Entry No. 90), is denied.

SIGNED on October 11, 2022, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge